UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW MARIA,<br><br>Plaintiff<br><br>v.<br><br>BOARD OF SUPERVISORS OF THE COUNTY OF VENTURA,<br><br>Defendant. | Case No. 2:22-cv-05582-MCS (GJS)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to United States District Judge Mark C. Scarsi, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.

## BACKGROUND

On August 8, 2022, Plaintiff filed a pro se civil rights complaint against Defendant Board of Supervisors of the County of Ventura ("County"). [Dkt. 1, "Complaint."] The gist of the Complaint is Plaintiff's asserted belief that local, state, and federal level elections conducted in California in November 2020 were not fair and cannot be fair going forward, because voting machines used in California are plagued by a "cryptographic security risk" that is inherent and by

design known as a "Trapdoor mechanism." Plaintiff contends that this Trapdoor mechanism makes it impossible to reconcile vote output results with ballot inputs unless there is a full visual inspection and recount of all paper ballots that were cast. Plaintiff further contends that unidentified "bad" and "nefarious" "actors" can take advantage of this Trapdoor mechanism and thereby alter vote totals after the voting machines have read ballots, without detection, and he asserts that they may have done so in connection with the November 2020 election. Plaintiff concedes that he cannot prove that any particular election was conducted unfairly, but claims that now that he has made the above allegations, it is up to the County to prove that its voting systems and procedures have conducted elections in the past that were fair and that will continue to be fair in the future. [Complaint ¶¶ 2-3, 18-21, 27.]

Plaintiff asserts three 42 U.S.C. § 1983 claims. As his first claim, Plaintiff contends that, by utilizing voting machines subject to the Trapdoor mechanism, the County has deprived its citizens of the capability of knowing that their votes were counted accurately, in violation of the Equal Protection Clause of the Fourteenth Amendment. [Complaint ¶¶ 28-34.] As his second claim, Plaintiff contends that this same alleged inability to know that their votes were counted accurately has deprived the County's voters of their federal rights to due process. [Complaint ¶¶ 36-41.] As his third claim, Plaintiff contends that this same situation – namely, that the use of voting machines subject to the Trapdoor mechanism causes County voters to be deprived of knowing that their votes were counted accurately – violates the Guarantee Clause of the United States Constitution, because voters lack the capability of knowing that "the guaranteed republican form of government was in fact provided in the November 2020 elections." [Complaint ¶¶ 43-45.]

As relief in connection with each claim, Plaintiff seeks to require the County to retain all November 2020 election data and to "decertify the November 2020 election results." Plaintiff also seeks to require the County to stop using electronic voting machines and to henceforth conduct elections using only hand-counted paper

ballots. [Complaint ¶¶ 35, 42, 46.] Similarly, in the Complaint's prayer for relief, Plaintiff asks the Court to order that: unless and until the County can prove beyond a reasonable doubt that voting machines used in the 2020 election and to be used in the then upcoming 2022 elections do not contain a Trapdoor mechanism, the County must not destroy, alter or change, and must preserve, any voting machines and related software, peripherals, and other data and equipment; the County must decertify the November 2020 election results; and the County must stop using electronic voting machines and must conduct elections using hand-counted paper ballots. [Complaint at 15-16.]

The County was served with process on October 7, 2022. [Dkt. 17.] On October 28, 2022, the County filed a motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Dkt. 18, "Motion."] The County also filed a Request for Judicial Notice. [Dkt. 19.][1] The Motion argues that this case should be dismissed because: Plaintiff lacks standing; this action is barred by the doctrine of laches; Plaintiff's claims are moot; and the three claims alleged fail to state claims upon which relief can be granted. Plaintiff filed an Opposition to the Motion on October 30, 2022 [Dkt. 21], and the County filed a Reply on November 14, 2022 [Dkt. 22].

## STANDARD OF REVIEW

### A. Rule 12(b)(1)

"Normally, [s]ubject-matter jurisdiction refers to the courts' statutory or constitutional power to adjudicate the case. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161, 130 S. Ct. 1237, 176 L.Ed.2d 18 (2010) . . . . (emphasis omitted).

---

[1] The matters set forth in the Request for Judicial Notice are proper subjects of judicial notice under Fed. R. Evid. 201(b), as they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Moreover, Plaintiff has not objected to the requested judicial notice. Accordingly, the Request for Judicial Notice is GRANTED.

Under that general rule, when a federal court . . . lacks subject-matter jurisdiction, the court must dismiss the complaint, sua sponte if necessary. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) . . . ." *Pistor v. Garcia*, 791 F.3d 1104, 1110-11 (9th Cir. 2015) (quotation marks and internal citations omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)

A Rule 12(b)(1) motion to dismiss either attacks the allegations of jurisdiction contained in the complaint or challenges the pleaded factual basis for subject matter jurisdiction. *Thornhill Publishing Co. v. General Tel. & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a Rule 12(b)(1) motion constitutes a facial attack, the Court must presume the factual allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "With a factual Rule 12(b)(1) attack . . ., a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242. An action may be dismissed for lack of subject matter jurisdiction, without leave to amend, when it is clear that the jurisdictional deficiency cannot be cured by amendment. *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980).

The parties disagree and/or or raise potential factual disagreements over various factual matters in their briefing. Resolving, or even considering, those existing or possible factual disagreements, however, is unnecessary to resolving the

fundamental and threshold jurisdictional issue raised by the Motion, namely, whether Plaintiff has standing to raise the claims alleged in the Complaint. For the reasons discussed below, the Court concludes that Defendant's standing argument presents a facial Rule 12(b)(1) jurisdictional attack and, therefore, the applicable standards for such an attack govern here.

### B. Rule 12(b)(6)

A defendant is entitled to dismissal under Rule 12(b)(6) when a complaint fails to state a cognizable legal theory or alleges insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Conclusory allegations are insufficient. *Id.* at 678-79. Although a complaint need not set forth detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In addition to appropriate factual allegations, a complaint must include fair "notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011).

On review of a Rule 12(b)(6) motion, the Court accepts all facts alleged in a complaint as true and draws all reasonable inferences in favor of the plaintiff. *Gant v. Cnty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014). For an allegation to be "entitled to the assumption of truth," however, it must be well-pleaded, that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion. *Iqbal*, 556

U.S. at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation omitted).

### C. Amendment

If a complaint is to be dismissed, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000); *see Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (internal citations and quotation omitted)). Leave to amend is not appropriate, even given the liberal pleading standard for *pro se* litigants, when "the pleading 'could not possibly be cured by the allegation of other facts.'" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation omitted).

## DISCUSSION

As noted above, the County raises four possible bases for dismissing this case under Rules 12(b)(1) and (6). While all might warrant dismissal if the County's arguments are correct, only one of them need be considered by the Court. This is a case that necessarily must start and end with a resolution of the Article III standing requirement, because as discussed below, Plaintiff lacks standing to pursue the claims alleged in the Complaint. Accordingly, jurisdiction is lacking, necessitating dismissal for that reason alone, and the Court therefore need not consider the other challenges raised.

Under Article III of the United States Constitution, federal courts may

exercise judicial power only if a "case" or "controversy" exists. *See Lujan v. Defenders Of Wildlife*, 504 U.S. 555, 559 (1992); *see also Valley Forge Christian College v. American United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (Article III limits the judicial power of courts "to the resolution of 'cases' and 'controversies'"). "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights." *Id.*

For a case or controversy to exist, the plaintiff must have "standing" to pursue the claim raised. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (the standing "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong"). Standing is a "threshold" requirement in determining jurisdiction, and "a plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has 'a personal stake in the outcome,' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), distinct from a 'generally available grievance about government,' *Lance v. Coffman*, 549 U.S. 437, 439, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007) (per curiam )." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018). The elements of standing are "an indispensable part of the plaintiff's case," not "mere pleading requirements." *Lujan*, 504 U.S. at 561. A plaintiff has the burden of proving that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

The first requirement of standing – injury in fact – is the first and "foremost" of the standing elements and is a "constitutional requirement." *Spokeo*, 578 U.S. at 338-39. To satisfy this requirement, a plaintiff show that he suffered "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal punctuation omitted). A plaintiff's complaint must establish that he has a "personal stake" in the alleged dispute and that the alleged injury

suffered is particularized as to him. *Raines v. Byrd*, 521 U.S. 811, 819 (1997); *see also Lujan*, 504 U.S. at 560-61 & n.1 (to have standing, the plaintiff must have suffered a "particularized" injury, which means that "the injury must affect the plaintiff in a personal and individual way"). This is in contrast to a "generalized grievance," the impact of which on the plaintiff is "undifferentiated and common to all members of the public" and which does not satisfy standing's injury in fact requirement. *Id.* at 575 (citations and internal punctuation omitted). A generalized grievance, "no matter how sincere, cannot serve as a basis for standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). A litigant who raises "'only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Id.* (citation omitted).

  The Court has reviewed the allegations of the Complaint carefully and liberally, as well as Plaintiff's arguments in his Opposition to the Motion. Having done so, it is clear to the Court that Plaintiff lacks standing to bring this case in a federal court, because he has not met, and cannot meet, the first element of standing, namely, the injury in fact requirement. Each of his three claims rests on the premise that all voters in Ventura County suffered the same federal constitutional harm, because each and every one of them cannot be certain that their vote was not altered by reason of the alleged Trapdoor mechanism. *See, e.g.,* Claim 1: "By utilizing voting machines subject to the Trapdoor mechanism . . ., Ventura County has deprived its voters of the capability of knowing that their vote was accurately counted" and "No citizen can be assured that their vote was not modified by actors working with the Trapdoor mechanism, and therefore voters in Ventura County were denied equal protection of the election laws" [Complaint ¶ 34]; Claim II: "By utilizing voting machines subject to the Trapdoor mechanism . . ., Ventura County has deprived its voters of the capability of knowing that their vote was accurately

counted" [Complaint ¶ 41]; and Count III: "By utilizing voting machines subject to the Trapdoor mechanism . . ., Ventura County has deprived its voters of the capability of knowing that their vote was accurately counted and that the guaranteed republican form of government was in fact provided in the November 2020 elections" [Complaint ¶ 45].

In a challenge to the November 2020 presidential election results seeking to prevent certification – the same election that Plaintiff now seeks to decertify two years after-the-fact – the United States Court of Appeals for the Eleventh Circuit succinctly explained why a claim such as Plaintiff's constituted a generalized grievance at most that does not support standing. In *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020), plaintiff Wood sued as a private citizen and registered Georgia voter, claiming that Georgia's absentee ballot and recount procedures violated both state law and the United States Constitution. The Eleventh Circuit found that he had not suffered a distinct, personal injury as a result of the matters alleged and asserted only a generalized grievance.

> Wood cannot explain how his interest in compliance with state election laws is different from that of any other person. Indeed, he admits that any Georgia voter could bring an identical suit. But the logic of his argument sweeps past even that boundary. All Americans, whether they voted in this election or whether they reside in Georgia, could be said to share Wood's interest in "ensur[ing] that [a presidential election] is properly administered."

*Id.* at 1314. Here too, all voters in Ventura County – indeed all voters in California and the United States – can be said to share Plaintiff's interest in ensuring that their votes are counted accurately and not interfered with pursuant to the manipulation of a purported software bug or mechanism by, as Plaintiff puts it, "bad" or "nefarious" actors. This interest shared by millions, however, does not translate to the type of particularized and personal injury required to satisfy the injury in fact element of the standing requirement.

9

For example, in *O'Rourke v. Dominion Voting Systems, Inc.*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022), eight registered voters from several states, relying on their status as registered voters, filed a class action complaint alleging that defendant Dominion Voting Systems[2] and others had influenced or interfered with the November 2020 presidential election, thereby damaging the interest all registered voters possess in having a free and fair election to determine the Presidency. The district court granted a motion to dismiss for lack of Article III standing, finding that the plaintiffs asserted a generalized grievance, because their claimed injuries were not different than those suffered by all registered voters. *Id.*, at *1. The Tenth Circuit affirmed, noting that the Supreme Court has repeatedly rejected finding standing "based only on 'a generalized grievance shared in substantially equal measure by all or a large class of citizens.'" *Id.,* at *2 (quoting *Warth v. Selding*, 422 U.S. 490, 499 (1975)). As the Tenth Circuit explained, "[t]hat means that a plaintiff who is 'claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy.'" 2022 WL 1699425, at *2 (quoting *Lance*, 549 U.S. at 439). While the plaintiffs asserted that their injuries were particularized, the Tenth Circuit concluded that their asserted injuries were not "in any way different than the alleged injuries to every registered voter in the United States," and thus, they lacked standing and dismissal was correct. *Id.*

*Pirtle v. Nago*, Case No. 1:22-cv-00381-JMS-WRP (D. Haw.), is a case even more directly on point, given the substantial similarities of the complaint filed in that action to that filed by Plaintiff.[3] In his capacity as a resident and registered

---

[2]  Plaintiff alleges that the County used Dominion voting machines in the November 2020 elections and would use them thereafter. [Complaint ¶ 17.]

[3]  A comparison of the two pleadings shows that they assert many of the same, if not identical, allegations (including regarding the alleged Trapdoor mechanism), both rely on the

10

voter of Hawaii, plaintiff Pirtle sued Hawaii's Chief Election Officer, making the same allegations as here that, by using voting machines subject to the alleged Trapdoor mechanism, Hawaii had deprived Hawaiian voters of the capability of knowing that their votes were accurately counted and that the guaranteed republican form of government was in fact provided by the November 2020 presidential election.  Pirtle sought similar relief to that sought here, such as restraining Hawaii from destroying any machines, paper ballots, software, data, etc. related to the 2020 election and requiring it to conduct future elections only through paper ballots, although Pirtle did not seek to decertify the 2020 election results as Plaintiff does. [*See* Docket No. 1.]

Shortly after the Pirtle complaint was filed, the District Court in Hawaii denied Pirtle's motion seeking a temporary restraining order to require Hawaii to preserve all November 2020 election-related records, ballots, evidence, etc.  The District Court concluded that Pirtle's Guarantee Clause claim (the same claim alleged here as Claim III) necessarily failed, because "'[the Supreme] Court has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim.'" *Pirtle v. Nago*, 2022 WL 3915570, at *3 (D. Haw. Aug. 31, 2022) (citation omitted).  The District Court further found that Pirtle lacked standing to bring the equal protection and due process claims he alleged (the same claims alleged here as Claims I and II), because he asserted only a generalized grievance and not a particularized injury.  Pirtle's allegations that Hawaii voters had been deprived of knowing that their votes had been counted accurately due to the use of voting machines subject to the Trapdoor mechanism – the same allegations that serve as the foundation of the Complaint in this case – were generalized grievances that Pirtle lacked standing to assert in federal court. *Id.,* at *4.  Three months later, the District Court granted the Defendant's motion to dismiss for the same reason,

---

attached Maras declaration to support those allegations, and they raise the same three claims for relief.

11

finding that subject-matter jurisdiction was lacking, because Pirtle did not have standing to bring these generalized grievances related to the November 2020 and 2022 elections. *See* Order of November 18, 2022 in *Pirtle v. Nago*, Case No. 1:22-cv-00381-JMS-WRP (D. Haw.) (dismissing action without leave to amend after concluding that amendment would be futile) [Docket No. 19].

Plaintiff argues that he has satisfied the first element of standing, because he alleges that there is a substantial risk of harm as to future elections given the Trapdoor mechanism he alleges. [Opposition at 6, citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).] Plaintiff's reliance on the *Susan B. Anthony List* decision is misplaced, as it deals with a particular type of standing issue not present here, namely, whether a threatened enforcement of a criminal law can give rise to Article III standing. As the Supreme Court explained, in the case before it, the plaintiffs had adequately alleged that they intended to engage in a course of conduct affected by a constitutional interest (First Amendment) that was proscribed by criminal statute and that a credible threat of criminal prosecution existed. The Supreme Court found that, under its substantial existing precedent, this threatened criminal prosecution, coupled with the extant threat of burdensome administrative proceedings, satisfied the injury in fact requirement for standing for these particular plaintiffs. 573 U.S. at 158-66. In contrast here, labeling Plaintiff's asserted injury a "future" one does not render it particularized instead of generalized. As Plaintiff himself argues, the alleged harm over which he sues is not unique to him, because "[a]n unfair election in Ventura County would by definition also affect every other resident of Ventura County alongside Plaintiff" and he has suffered "irreparable harm, alongside all Ventura County residents," and his personal interest is not to overturn any particular unfair election but, rather, to "ensur[e] that all residents of Ventura County, and by extension all Californians and all Americans with a stake in California's Federal elections, have the benefit of fair elections in the future."

[Opposition at 3, 5, 14.] This is a quintessential allegation of generalized injury, not one particular to Plaintiff himself.

Plaintiff attempts to do an end run around his lack of standing by alluding indirectly to the Supreme Court's decision last year in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), asserting that this decision shows that "precedent is not always binding and can be re-written" and urging the Court to ignore longstanding precedent and to alter the existing law to find that allegations of the type he has made state an actual, particularized injury for standing purposes. [Opposition at 6.] This argument is not persuasive. As a district court, this Court is bound to follow and apply the holdings and analyses of the higher federal courts. *See, e.g., Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc). Moreover, deviating from the wealth of Supreme Court and Circuit Court authority that is contrary to Plaintiff's standing arguments would be legally insupportable and improper, even if the Court were inclined to do so under the facts of this case, which it is not. Ample precedent makes clear that Plaintiff lacks standing, and thus, jurisdiction is absent.

For the reasons set forth above, Plaintiff has not satisfied the first element of the standing requirement, injury in fact. It is clear that he cannot do so and that this missing element cannot be satisfied by amendment. Accordingly, as the foremost element of standing is absent, the Court need not, and will not, address the second and third elements of the standing requirement. The jurisdictional defect in this case is inherent and cannot be fixed by amendment, and thus, the Court lacks jurisdiction to consider the Complaint. The Motion, therefore, should be granted. Because amendment would be futile, the Complaint should be dismissed without leave to amend and the case should be dismissed without prejudice. *See Barke v. Banks*, 25 F. 4th 714, 721 (9th Cir. 2022) ("dismissals for lack of Article III jurisdiction must be entered without prejudice because a court that lacks jurisdiction 'is powerless to reach the merits'") (citation omitted).

**RECOMMENDATION**

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting this Report and Recommendation; (2) granting the Motion and dismissing the Complaint without leave to amend; and (3) dismissing this action without prejudice.

DATED: February 9, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the United States Court of Appeals for the Ninth Circuit, but may be subject to the right of any party to file objections as provided in the Local Civil Rules for the United States District Court for the Central District of California and review by the United States District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until the District Court enters judgment.